UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA RUPP, <br> *On behalf of herself and all others similarly situated,* <br>               Plaintiff, <br> *v.* <br> TEE JAYE'S COUNTRY PLACE, INC., <br>               Defendant. | Case No. 2:19-cv-04658 <br><br> JUDGE JAMES L. GRAHAM <br><br> MAGISTRATE JUDGE <br> ELIZABETH PRESTON DEAVERS <br><br> **JOINT MOTION FOR APPROVAL OF SETTLEMENT** |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff, prior Named Plaintiff, and Opt-Ins representing a substantial percentage of the potential value of their claims. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

    Exhibit 1:    *Joint Stipulation of Settlement and Release*;

    Exhibit 2:    Proposed Final Order and Judgment Approving Settlement and the Dismissing Action;

    Exhibit 3:    Exhibit A to *Joint Stipulation of Settlement and Release* – Individual Payments Allocation Schedule;

    Exhibit 4:    Declaration of Plaintiffs' Counsel; and

Exhibit 5:     Exhibit B to *Joint Stipulation of Settlement and Release* – Amanda Rupp Settlement and Release Agreement.

The following sections of this Motion explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## I.     THE LITIGATION

### A.  The Claims and Issues

Prior Named Plaintiff Melinda Cockrell filed this Action in the United States District Court for the Southern District of Ohio, Eastern Division on October 21, 2019. (ECF #1.) Plaintiff's Complaint alleged, among other things, that Defendant failed to pay her and other similarly situated tipped employees and other employees with similar job titles and/or positions of Defendant overtime wages, minimum wages, and tips allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the wage laws of the State of Ohio, O.R.C. §§ 4111.01 et seq., Article II, Section 34a of the Ohio Constitution. (*Id*.) Defendants filed an Answer to Plaintiff's Complaint, denying all liability under any of Plaintiff's claims. (ECF #10.)

On April 20, 2021, with the filing of Plaintiffs' First Amended Collective Action Complaint, Named Plaintiff Amanda Rupp joined this matter as an additional Named Plaintiff along with Melinda Cockrell on behalf of themselves and all others similarly situated. (ECF #41.) Plaintiffs' First Amended Collective Action Complaint narrowed Plaintiffs' claims to the alleged time editing violations, removed Defendants' individual owner as an individually named Defendant, and narrowed the scope of the collective action to current full and part-time hourly tipped servers at the South Hamilton Road, Whitehall, Ohio Tee Jaye's Country Place location and at the Brice Road, Reynoldsburg, Ohio Tee Jaye's Country Place location. (*Id*.) Defendant

filed an Answer to Plaintiff's First Amended Complaint, denying all liability under any of Plaintiff's claims. (ECF #42.)

On June 29, 2021 Plaintiffs' Counsel filed a Suggestion of Death with the court, notifying the Court that Prior Named Plaintiff Melinda Cockrell had deceased. (ECF #44.) On January 22, 2022 Plaintiff filed an unopposed motion for leave to file Plaintiff's Second Amended Collective Action Complaint, which removed Prior Named Plaintiff Melinda Cockrell as a Named Plaintiff. (ECF #60.) The Court granted the motion for leave (ECF #66), and Plaintiff's Second Amended Collective Action Complaint was entered on the record on February 16, 2022. (ECF #67.) Defendant filed an Answer to Plaintiff's Second Amended Complaint denying all liability under any of Plaintiff's claims. (ECF #68.)

Defendant Tee Jaye's Country Place, Inc. is a Columbus, Ohio-based restaurant chain. As outlined in Plaintiff's Second Amended Collective Action Complaint, Plaintiff Amanda Rupp contends that she and other workers were not paid for all hours worked because Defendant's owners, managers and/or supervisors allegedly edited, modified, and/or altered Plaintiff's and the FLSA Collective's timekeeping records or time punch recording activities in the timekeeping system in violation of the FLSA, 29 U.S.C. §§ 201-219, and the wage laws of the State of Ohio, O.R.C. §§ 4111.01 et seq., Article II, Section 34a of the Ohio Constitution. The parties hotly dispute whether the Named Plaintiff's and other workers' timekeeping records were edited, modified, and/or altered leading to less time worked than paid. Defendant denies all of the material claims and contentions alleged by Plaintiffs, and believes that the evidence supports its position. Defendant further asserts that the individualized analysis of the issues regarding alleged time editing and actual compensable hours worked that would be required as to each potential class member would warrant decertification of this collective action as to both the South

3

73086257v1

Hamilton Road, Whitehall, Ohio Tee Jaye's Country Place location and at the Brice Road, Reynoldsburg, Ohio Tee Jaye's Country Place location.

Obtaining the alleged unpaid wages at trial would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b) as to both the South Hamilton Road, Whitehall, Ohio Tee Jaye's Country Place location and at the Brice Road, Reynoldsburg, Ohio Tee Jaye's Country Place location; (2) prove that each opt-in collective action Plaintiff really performed compensable work each workweek that was edited away, in addition to the amounts of these times, and defeat Defendant's argument that the amount of work Plaintiffs allege was not paid, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence; and (3) defeat Defendant's legal argument that any alleged violation was not willful and/or made in good faith.

### B. Conditional Class Certification

The Court granted the parties' Joint Stipulation for Conditional Certification and Notice (*see* ECF ##19, 19-1, 1-2, 19-3) on August 25, 2020. (ECF #20.) Notice was mailed and emailed to putative class members, and the opt-in period ended forty (40) days after the date the Notice and Opt-In Consent Form were mailed. (*See* ECF #19 at ¶ 7.) The Court further granted the parties' second Joint Stipulation for Expanded Conditional Certification and Notice (*see* ECF ##38, 38-1, 38-2, 38-3) on June 16, 2021. (ECF #43.) Notice was mailed and emailed to putative class members, and the opt-in period ended forty (40) days after the date the Notice and Opt-In Consent Form were mailed. (*See* ECF #38 at ¶ 8.)

Those putative class members who opted in to Case No. 2:19-CV-04658 were joined as party Plaintiffs. On September 27, 2021, Defendant filed a Motion to Dismiss Non-Responsive

4

Opt-In Plaintiffs from the Case for Failure to Comply with Discovery. (ECF #50.) On September 27, 2021 the court granted Defendants' motion, and Christian Skaggs (ECF #22), Ellen Najee (ECF #21), Erin McCarthy (ECF #24), and Karen Porter (ECF #26) were dismissed from the matter. (ECF #51.)

### C. Discovery and Document Analysis

The parties engaged in extensive discovery, and Defendant ultimately produced voluminous data and documents necessary to fully and fairly evaluate the claims of the Plaintiff and Opt-Ins. Prior to engaging in settlement negotiations, Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents.

Defendant ultimately produced voluminous personnel, compensation and hours data and documents in addition to PDF versions of data compilation spreadsheets where available. Plaintiffs' Counsel ultimately created spreadsheets from the records produced by Defendant to analyze potential damages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.  THE NEGOTIATIONS

Following Plaintiff's receipt of the data and documents necessary to fully and fairly evaluate the claims of the Plaintiff and potential Opt-Ins and class members, the parties engaged in a mediation before Attorney John Camillus on July 24, 2020. This mediation was unsuccessful. On January 5, 2021, the parties engaged in a second mediation before Attorney John Camillus. The parties were at an impasse following this second mediation as well. Plaintiffs

and Defendant, through counsel, continued informal negotiations throughout the pendency of the matter, and ultimately agreed to the terms of a settlement in or about October, 2021. These negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Ex. 4.) Formal settlement documents, including the Joint Stipulation of Settlement and Release attached as Exhibit 1, were later prepared and executed for approval by the Court.

### III.     THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Exhibit 3) – are based proportionally on an individual assessment of the hours worked by Plaintiffs for Defendant as hourly employees during which time they allege they were not paid for all hours worked. The settlement achieves an excellent result for the covered workers, and results in an average payout of $3,225.00 per worker.

In addition, the Named Plaintiff, Amanda Rupp, will receive a service award of $2,500.00 in recognition of her service to Plaintiffs' Counsel and her contribution to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Amanda Rupp consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; provided and reviewed other important documents and information throughout the course of the litigation; and promptly rose to the occasion as the sole

named Plaintiff after Plaintiffs' counsel learned that Ms. Cockrell had deceased. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Plaintiff Amanda Rupp's efforts have resulted in a significant recovery for the other Opt-Ins.

Plaintiffs' Counsel will receive an agreed-upon amount for attorneys' fees and reimbursement of litigation costs. The payment to counsel represents a significant reduction from the total lodestar attorney fees expended in the prosecution of the Action. (*See* Exhibit 4.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel may not be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiff and Opt-Ins.

## IV.   THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Zego v. Meridian-Henderson*, S.D.Ohio No. 2:15-CV-3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (quoting *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability

7

under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate."); *see also Landsberg v. Acton Ents.*, S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353).

### A. The Seven-Factor Standard is Satisfied

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20. *See also Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). These factors include "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford*, 2008 WL 4724499, at *3 (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011) (citing *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008), citing *Granada,* 962 F.2d at 1205-06)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant

8

vehemently denies, but also each worker's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers' records were edited, modified, and/or altered leading to less time worked than paid. Defendant denies all of the material claims and contentions alleged by Plaintiffs', and believes that the evidence supports its position.. Defendant further asserts that the individualized analysis of the issues regarding alleged time editing and actual compensable hours worked that would be required as to each potential class member would warrant decertification of this collective action as to both the South Hamilton Road, Whitehall, Ohio Tee Jaye's Country Place location and at the Brice Road, Reynoldsburg, Ohio Tee Jaye's Country Place location. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiff and Opt-Ins is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24-25 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and Opt-Ins to this action.

  The other six factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or

9

collusion. The parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Counsel on both sides support the Settlement, as does the Named Plaintiff herself. (*See* Exhibits 1, 4, 5.)

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *6 (June 15, 2010), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Plaintiff and Opt-Ins – listed in the Individual Payments Allocation Schedule (Exhibit 3) – represent a substantial percentage of the potential value of their claims, and the allocations are based proportionally on an individual assessment of the hours worked by Plaintiffs for Defendant as hourly employees during which time they allege they were not paid for all hours worked. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the damages methodology that Plaintiff and Opt-Ins will present at trial.

### C. The Service Award to the Plaintiff Is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and her contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, reasonable service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman v. Grube, Inc.,* N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (May 4, 2018) (approving $7,500 service award to named plaintiff).

Indeed, based on the Declaration of Plaintiffs' Counsel, the named Plaintiff Amanda Rupp incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Amanda Rupp consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; provided and reviewed other important documents and information throughout the course of the litigation; and promptly rose to the occasion as the sole named Plaintiff after Plaintiffs' counsel learned that Ms. Cockrell had deceased. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff Amanda Rupp faithfully represented the interests of

11

the Potential Opt-Ins and ably assisted Plaintiffs' Counsel. Her contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $2,500.00 is reasonable and well-earned. Defendant has no objection to this award.

### D. Plaintiffs' Counsels' Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "In determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23,

2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (citing *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

In the present case, the efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Exhibit 3) – are based proportionally on an individual assessment of the hours worked by Plaintiffs for Defendant as hourly employees during which time they allege they were not paid for all hours worked. The settlement achieves an excellent result for the covered workers, and results in an average payout of $3,225.00 per worker. Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as investigation and interviewing of current and former workers of Defendant and opt-in collective members.

Plaintiffs' requested attorneys' fees award comprise of 32.295% ($17,116.60 award / $53,000.00 settlement fund) of the overall amounts recovered, less than the one-third standard award regularly approved in FLSA collective actions. As noted in *Osman*, one-third of the common fund "is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010), citing *Dillworth*, 2009 U.S. Dist. LEXIS 76947; *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009); *Fincham v. Nestle Prepared Foods Co.*, 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.*, Case No. 1:07-CV-1110 (N.D. Ohio 2007)); *Bailey v. Black Tie Mgt. Co. LLC*, S.D.Ohio No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *12-13 (Aug. 12, 2020) ("District courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount.") (citing *see e.g., Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 U.S. Dist. LEXIS 79606, at *13-14 (W.D. Mich. Oct. 26, 2007), citing *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.")); *Wright v. Premier Courier, Inc.,* S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13-18 (Aug. 17, 2018); *Castillo v. Morales, Inc.*, S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *17-24 (Dec. 22, 2015); *Satterly v. Airstream, Inc.*, S.D.Ohio No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *28-29 (Sep. 25, 2020) (noting that "one-third of the settlement fund" is the "normal fee amount in common fund settlement in wage and hour cases.") (citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist. LEXIS 204371, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (approving as reasonable 1/3 for attorney's fees from a common fund

of $1,140,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 U.S. Dist. LEXIS 179474, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund") (additional citations omitted)).

"The lodestar figure is used to confirm the reasonableness of the percentage-of-the-fund award." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to a multiplier of approximately 2.5. *See, e.g., Castillo*, 2015 U.S. Dist. LEXIS 192936, at *22 ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."); *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (July 11, 2014) ("Counsel's cumulative lodestar of $512,885, compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers...") (citations omitted); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *7 (citing *Thorn v. Bob Evans Farms, Inc.*, No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016) ("approving 32.92 percent of the common fund when that number amounted to a 2.01 multiplier of plaintiff's counsel's loadstar attorney's fees").

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named and Opt-In Plaintiffs. As of January 11, 2022,[1] at a combined fee lodestar of

---

[1] Plaintiffs' Counsel has incurred a non-de minimis amount of additional attorney time in this matter since January 11, 2022 (approximately when this Motion was originally drafted by Plaintiffs' Counsel and submitted to Defense Counsel for review and consideration) pertaining and related to teleconferences regarding Plaintiff's Second Amended Collective Action Complaint (ECF ##60, 61, 62, 63, 65, 66, 67), attempted service on Ms. Cockrell's estate/estate

$58,910.00, the requested attorney fee of $17,116.60 results in a "negative multiplier" if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 at ¶¶ 46-48.) Such a negative multiplier supports that the fee sought is reasonable. *See, e.g, Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)); *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019). In addition, the Settlement provides for $1,133.40 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 at ¶¶ 49-50.) Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V. <u>CONCLUSION</u>

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

---

representative (ECF ##64, 64-1, 64-2, 64-3), further negotiation of the settlement documents and this Motion, and general administration of this matter. This additional time has not been included in the lodestar calculation.

Respectfully submitted,

| | |
|---|---|
| *s/ Ryan A. Winters* | *s/ Janica Pierce Tucker* |
| Joseph F. Scott (0029780) (Trial Attorney) | Janica Pierce Tucker (0075074) Trial Attorney |
| Ryan A. Winters (0086917) | TAFT STETTINIUS & HOLLISTER LLP |
| Kevin M. McDermott II (0090455) | 65 East State Street, Suite 1000 |
| SCOTT & WINTERS LAW FIRM, LLC | Columbus, Ohio 43215-4213 |
| The Caxton Building | Telephone: (614) 221-2838 |
| 812 Huron Road E., Suite 490 | Facsimile: (614) 221-2007 |
| Cleveland, Ohio 44115 | jpierce@taftlaw.com |
| Telephone: (216) 912-2221 | |
| Facsimile: (216) 350-6313 | Shawna M. Sorrell (0097915) |
| jscott@ohiowagelawyers.com | TAFT STETTINIUS & HOLLISTER LLP 40 N. |
| rwinters@ohiowagelawyers.com | Main Street, Suite 1700 |
| kmcdermott@ohiowagelawyers.com | Dayton, Ohio 45423 |
| | Telephone: (937) 641-2070 |
| *Attorneys for Plaintiffs* | Facsimile: (937) 228-2816 |
| | ssorrell@taftlaw.com |
| | |
| | *Attorneys for Defendant* |
| | *Tee Jaye's Country Place, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)

73086257v1